# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1308

_____

Jim Jones; Terrence M. Schumacher;    \*
Shad Dahlgren; Harold G. Rickertsen;    \*
Todd Ehler; Robert E. Beck, III,    \*
  \*
      Appellees,    \*
  \*
    v.    \*
  \*  Appeal from the United States
John Gale, in his official capacity    \*  District Court for the
as Secretary of State of Nebraska;    \*  District of Nebraska.
Jon Bruning, in his official capacity    \*
as Attorney General of Nebraska,    \*
  \*
      Appellants.    \*
  \*
Organization for Competitive Markets;    \*
R-Calf USA; Oregon Livestock    \*
Producers Association; Spokane County    \*
Cattle Producers; Icon; The Independent    \*
Beef Association of North Dakota;    \*
Montana Cattleman's Association;    \*
Nevada Livestock Association; State    \*
of Minnesota; State of Iowa; State of    \*
Missouri; State of North Dakota; State    \*
of West Virginia; Nebraska Farmers    \*
Union; The Center for Rural Affairs;    \*
The Nebraska Grange; Women    \*
Involved in Farm Economics;    \*
The Nebraska Catholic Conference;    \*
The American Corn Growers of    \*
Nebraska; Nebraska Appleseed Center    \*
for Law in the Public Interest;    \*

Sierra Club; The Great Plains                    *
Environmental Law Center; Nebraska               *
Environmental Action Coalition;                  *
Michael Jacobson; Nebraska League                *
of Rural Voters; Nebraskans for Peace;           *
National Farmers Union; National                 *
Family Farm Coalition; American Corn             *
Growers; Minnesota Farmers Union;                *
Land Stewardship Project; North                  *
Dakota Farmers Union; Dakota                     *
Resource Council; South Dakota                   *
Farmers Union; Dakota Rural Action;              *
Iowa Farmers Union; Iowa Citizens                *
for Community Improvement; Missouri              *
Farmers Union; Missouri Rural Crisis             *
Center; AR Farmers Union; Campaign               *
For Family Farms; Western                        *
Organization of Resource Councils;               *
Federation of Southern Cooperatives;             *
Illinois Farmers Union; Illinois                 *
Stewardship Alliance; IN Farmers                 *
Union; Citizens Action Coalition                 *
of Indiana; Powder River Basin                   *
Resource Council; KS Farmers Union;              *
WI Farmers Union; OH Farmers Union;              *
MI Farmers Union; Pennsylvania                   *
Farmers Union; Rocky Mountain                    *
Farmers Union; Montana Farmers                    *
Union; Utah Farmers Union; Texas                 *
Farmers Union; Alaska Farmers Union;             *
Oregon Farmers Union; WA Farmers                 *
Union; California Farmers Union,                  *
                                                 *
                 Amici on behalf                 *
                 of Appellants.                  *
                                                 *

Nebraska Bankers Association;                  *
Nebraska Chamber of Commerce and               *
Industry, Inc.; The Nebraska Realtors          *
Association; South Dakota Farm                 *
Bureau,                                        *
                                               *
     Amici on Behalf of Appellees.        *
                                               *
United States of America,                      *
                                               *
     Amicus on Behalf of Appellees.       *

                  _____

Submitted: September 28, 2006
Filed: December 13, 2006

_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The plaintiffs, six people who own various interests in Nebraska farm and ranch land operations, filed this action against Nebraska's secretary of state and attorney general in their official capacities (State Officials). The plaintiffs claimed that Initiative 300, which voters adopted as part of the state constitution in 1982, *see* Neb. Const. art. XII, § 8, violates the commerce clause, privileges and immunities clause, and equal protection clause of the United States Constitution and the Americans with Disabilities Act (ADA). All parties moved for summary judgment. The district court[1] granted summary judgment to the plaintiffs on their commerce clause and ADA claims, and granted summary judgment to the State Officials on the remaining claims. The State Officials appeal, and we affirm the district court's judgment that the

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

-3-

amendment based on Initiative 300 is unconstitutional because it violates the dormant commerce clause.

## I.

Initiative 300 prohibits corporations or syndicates (non-family-owned limited partnerships) from acquiring an interest in "real estate used for farming or ranching in [Nebraska]" or "engag[ing] in farming or ranching," with certain exceptions. *See* Neb. Const. art. XII, § 8. The initiative originated as a constitutional amendment proposed through the initiative process and appeared as a ballot question on Nebraska's 1982 general election ballot. The Nebraska Attorney General prepared a ballot title and explanatory statement for Initiative 300. *See* Neb. Stat. § 32-1410(1). The title read: "Shall a constitutional prohibition be created prohibiting ownership of Nebraska farm or ranch land by any corporation, domestic or foreign, which is not a Nebraska family farm corporation ... ?" An explanatory statement defines the effect of a vote for and against a measure. *Id.* The explanatory statement presented to Nebraska voters for Initiative 300 read: "A vote FOR will create a constitutional prohibition against further purchase of Nebraska farm and ranch lands by any corporation or syndicate other than a Nebraska family farm corporation. A vote AGAINST will reject such a constitutional restriction on ownership of Nebraska farm and ranch land." The voters adopted Initiative 300, and it became part of the Nebraska constitution upon the issuance of a proclamation by the governor in 1982.

The Initiative defines a "family farm or ranch corporation," which is specifically excepted from the initiative's restrictions, as "a corporation engaged in farming or ranching or the ownership of agricultural land, in which the majority of the voting stock is held by members of a family ... at least one of whom is a person residing on or actively engaged in the day to day labor and management of the farm or ranch." Neb. Const. art. XII, § 8. In addition, an exemption from the corporate farming ban is provided, *inter alia*, to former "family farm corporations" for a period

-4-

of fifty years after they cease to meet the criteria for that designation, provided that majority ownership of the corporation remains within the family. *Id.*

## II.

The State Officials contend that none of the plaintiffs had standing to bring the commerce clause claim and therefore the district court erred in concluding that it had jurisdiction. A plaintiff has the burden of establishing subject matter jurisdiction, *Hoekel v. Plumbing Planning Corp.*, 20 F.3d 839, 840 (8th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 974 (1994), for which standing is a prerequisite, *Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). To establish standing, a plaintiff is required to show that he or she had " 'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' Second, the injury must be traceable to the defendant's challenged action. Third, it must be 'likely' rather than 'speculative' that a favorable decision will redress the injury." *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)), *cert. denied*, 541 U.S. 1037 (2004).

We review the district court's conclusion that the plaintiffs had standing *de novo*. *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 484 (8th Cir. 2006). Although the district court concluded that all of the plaintiffs had standing to bring the commerce clause claim, we have said previously that "where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial" to jurisdiction. *National Wildlife Fed'n v. Agricultural Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir. 1992) (internal quotation marks omitted) (citing *Bowen v. Kendrick*, 487 U.S. 589, 620 n.15 (1988)).

Plaintiff Terrence Schumacher, a resident of Boulder, Colorado, has an ownership interest in Nebraska farmland in five counties. Neither he nor any of his relatives reside on his farmland and he does not live close enough to the land to

perform the day-to-day labor and manage it. Mr. Schumacher would like to transfer his farmland to a limited liability entity, which would, *inter alia*, allow for improved fiscal planning and operational management of the farmland as an operating unit and provide more favorable options for estate planning. Initiative 300 precludes Mr. Schumacher from creating a limited liability farm operation because he does not meet the conditions of the family farm exemption, and as a result he has suffered and continues to suffer economic loss based on reduced fiscal and operational management efficiencies, marketing opportunities, and borrowing power, as well as increased administration expenses and federal estate taxes. Because Mr. Schumacher cannot qualify for the family farm exemption, he is exposed to personal liability for the debts, obligations, contracts, and torts related to his Nebraska farmland.

The State Officials acknowledge that Mr. Schumacher may not purchase farmland on a limited liability basis unless he or a member of his family resides on the farmland or is engaged in the farm's day-to-day labor and management. But they argue that he nevertheless lacks standing because the family-farm requirements apply to everyone and thus do not unduly burden Mr. Schumacher's interests. We think, however, that the question of interstate commerce 'burdens' pertains to the merits of Mr. Schumacher's claim and is "analytically distinct from the 'injury-in-fact' determination that is central to standing." *Adams v. Watson*, 10 F.3d 915, 925 n.16 (1st Cir. 1993).

Robert Beck III, another plaintiff, resides in rural Kearney, Nebraska, where he owns a cattle feedlot that provides for the daily care and feeding of cattle owned by his customers, many of whom live outside of Nebraska. Mr. Beck cannot contract with non-exempt out-of-state corporate entities for the purpose of raising and feeding livestock for slaughter. Mr. Beck alleges that as a result, he has lost business, income, and borrowing power. He further alleges that Initiative 300 has prevented him from gaining unfettered access to the national cattle market, and thereby reduced his competitiveness and ability to gain new customers resulting in economic loss.

In addition, Mr. Beck's access to working capital from out-of-state corporations is restricted because Initiative 300 prohibits non-exempt entities that provide equity in the form of ownership of cattle from feeding cattle at Mr. Beck's feedlot. The initiative prohibits him from freely changing ownership of his commercial cattle feeding operations and limits his ability to pool assets and resources with other unrelated Nebraska farmers and out-of-state corporations to acquire more land and personal assets for future development of his cattle operation. Finally, Initiative 300 prevents Mr. Beck from establishing succession plans that would allow him to transfer ownership gradually to employees who provide the day-to-day labor while he continues to manage the operation.

The State Officials acknowledge that under *Hazeltine*, 340 F.3d at 392, a plaintiff who does substantial business with out-of-state corporations and would suffer imminent business losses as a result of the challenged law has standing to bring a commerce clause claim. They argue, however, that Mr. Beck lacks standing because he does not have "actual contracts with out-of-state corporations" and therefore did not suffer an injury in fact.

But we agree with the district court that the predicaments of Messrs. Schumacher and Beck are comparable to those of the plaintiffs in *Hazeltine*, who we concluded had standing to challenge an amendment to the South Dakota Constitution that prohibited corporations and syndicates from holding land in the state. *See Hazeltine*, 340 F.3d at 591-92. We also think that the plaintiffs have standing to challenge the constitutionality of a law that has a direct negative effect on their " 'borrowing power, financial strength, and fiscal planning,' " *see Hazeltine*, 340 F.3d at 592 (quoting *Clinton v. City of New York*, 524 U.S. 417, 431 (1998). We do not believe that Mr. Beck was required to show that he had contracted with an out-of-state corporation in order to have standing. Both Mr. Schumacher and Mr. Beck explained how Initiative 300 had negatively affected their ability to earn income, borrow, and plan for their financial future. Mr. Schumacher's asserted inability to dispose of his

land as he wishes weakens his financial position in precisely the way that meets the conditions we set out in *Hazeltine* and that the Supreme Court established in *Lujan*: His claim involves a concrete and actual injury that can be traced back to the State Officials, and it is entirely likely that a favorable ruling will redress the injury. Because Messrs. Schumacher and Beck have standing, the district court had jurisdiction over the case.

## III.

We turn now to the question of whether Initiative 300 violates the dormant commerce clause of the United States Constitution. Where the relevant facts are not in dispute, we review *de novo* the question of whether a state constitutional provision violates the commerce clause. *See R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 734 (8th Cir. 2002).

The dormant commerce clause prohibits states from enacting laws that "discriminate against or unduly burden interstate commerce." *Hazeltine*, 340 F.3d at 592-93. As we explained in *Hazeltine*, when determining whether a law violates the dormant commerce clause, we ask first "whether the challenged law discriminates against interstate commerce. Discrimination in this context refers to 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' " *Id.* at 593. (quoting *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 99 (1994)). A law "overtly discriminates" against interstate commerce if it is discriminatory on its face, if it has a discriminatory purpose, or if it has a discriminatory effect. *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1067 (8th Cir. 2000).

## A.

We consider first whether Initiative 300 is discriminatory on its face. The State Officials argue that because Initiative 300 does not expressly prohibit the owning of agricultural land by out-of-state citizens and does not exclude solely out-of-state

corporations, it cannot be interpreted to discriminate facially against interstate commerce. We do not think that an interstate-commerce claim is precluded by the absence of an express prohibition on non-resident ownership or the fact that some Nebraska corporations (those that are not "family farm corporations") may suffer a negative impact under Initiative 300, *see C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391-92 (1994). We conclude instead that Initiative 300 is facially discriminatory because its prohibition against farming by corporations and syndicates does not apply to family farm corporations or limited partnerships in which at least one family member resides on or engages in the daily labor and management of the farm. We agree with the district court's holding that "Initiative 300 on its face, therefore, favors Nebraska residents, and people who are in such close proximity to Nebraska farms and ranches that a daily commute is physically and economically feasible for them." *Jones*, 405 F. Supp. 2d at 1081.

The State Officials maintain that this is an incorrect interpretation of Initiative 300. They argue that the law does not require the majority shareholder to live or work on farmland in Nebraska to qualify for the exception; they assert that a Colorado family farm corporation, for example, could operate on land in Nebraska as long as its majority shareholder or one of his or her family members lived or worked at the location of the corporation's Colorado farm. This argument is meritless. Although, as the officials observe, "[i]f a law is susceptible of a reasonable interpretation which supports its constitutionality, the court must accord the law that meaning," *Planned Parenthood of Minnesota v. State of Minnesota*, 910 F.2d 479, 482 (8th Cir. 1990), we do not believe that the interpretation offered by the State Officials is reasonable. Instead, their proposed interpretation of the family farm exemption, which attempts to avoid the interstate commerce problem, is untenable because it conflicts with the plain language of Initiative 300, contradicts the ballot language presented to voters, and is inconsistent with the Nebraska Supreme Court's reading of the law.

We give the words of Initiative 300 their most natural and obvious meaning. *See Pig Pro Nonstock Coop. v. Moore*, 253 Neb. 72, 83, 568 N.W.2d 217, 224 (1997); *see also Planned Parenthood of Mid-Missouri & Eastern Kansas, Inc. v. Dempsey*, 167 F.3d 458, 461 (8th Cir. 1999). As plaintiffs point out, the initiative regulates the ownership of land "in *this* state" and requires residing on or engaging in the daily labor and management "of *the* farm or ranch." Neb. Const. art. XII, § 8 (emphases added). The focus of the text is thus on activities within the state of Nebraska, and the phrase "of the farm or ranch" can only refer to a farm or ranch in Nebraska. Despite the State Officials' heroic effort to develop a plausible alternative construction, we think it rather plain that Initiative 300 requires residing or working on a Nebraska farm.

Our reading acquires further support from the ballot language that accompanied the text when Initiative 300 was voted on. As we have already said, the ballot stated that the amendment's purpose was to prohibit further purchases of agricultural land "by any corporation ... other than ... a *Nebraska* family farm corporation." *Jones*, 405 F. Supp. 2d at 1073 (emphasis added). The words "a Nebraska family farm corporation" cannot reasonably be read to mean that family farm corporations in other states could qualify.

The Nebraska Supreme Court's interpretation of Initiative 300 also undermines the State Officials' proposed construction. The court stated that "the plain language of Article XII § 8" prohibits "absentee ownership and operation of farm and ranch land by a corporate entity." *Pig Pro.*, 253 Neb. at 91, 568 N.W.2d at 228. If the initiative meant to prohibit absentee ownership, it would manifestly defeat its purpose to interpret it to mean that a corporation located in some other state would be allowed to operate farmland in Nebraska.

The State Officials quote *Dempsey* for the proposition that when "an otherwise acceptable construction of a statute would raise serious constitutional problems, the

-10-

Court will construe the statute to avoid such problems." *See Dempsey*, 167 F.3d at 461 (internal quotations and citations omitted). But the officials are engaging in selective quotation. In *Dempsey*, we specifically held that we always begin statutory interpretation with the "plain language of the statute itself" and that we will construe a statute to avoid constitutional problems only if its "language is ambiguous" and such a construction does not plainly contradict the "legislative intent." *Id.* As we have said, the language of Initiative 300 plainly requires residing or working on a Nebraska farm; thus there is no ambiguity to construe. We note, moreover, that even if there were an ambiguity, we would reject the State Officials' proposed interpretation because it would frustrate the voters' intent, which we address more fully below.

Thus, we read Initiative 300 as the district court did and hold that Initiative 300 is discriminatory on its face because it affords "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Hazeltine*, 340 F.3d at 593 (internal citations omitted).

B.

Although we have already determined based on a facial review that Initiative 300 is discriminatory, we agree with the district court that there is another, independent reason for concluding that it burdens out-of-state interests: The initiative has a discriminatory intent. *Cf. Hazeltine*, 340 F.3d at 593. As the State Officials point out, the Nebraska Supreme Court has held that the intent of the voters in adopting an initiative amendment to the state constitution must be determined from the words of the amendment itself. *See Pig Pro*, 253 Neb. at 82, N.W.2d at 223-24. But the State Officials admit that we are not bound by the Nebraska Supreme Court's precedent on this point. Rather, as we have held previously, we "look to direct and indirect evidence to determine whether a state adopted a statute with a discriminatory purpose," which may include evidence in the form of "statements by lawmakers." *Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061, 1065 (8th Cir. 2004). In determining the purpose of an initiative amendment in *Hazeltine*, 340 F.3d at 593-96, we relied on

-11-

the statements and conduct of the amendment's drafters.  And in *SDDS, Inc. v. South Dakota*, 47 F.3d 263, 268 (8th Cir. 1995), we considered a pamphlet prepared for voters by the state attorney general in determining whether a referendum had a discriminatory intent.

The text of Initiative 300 and the ballot title reveal its discriminatory purpose. Under Nebraska law, a "ballot title shall express the purpose of the measure" submitted to the voters, Neb. Stat. § 32-1410(1), and here the ballot title told voters that Initiative 300 would "prohibit[] ownership of Nebraska farm or ranch land by any corporation, domestic or foreign, which is not a Nebraska family farm corporation." We agree with the district court that the "ballot title, and the language of Initiative 300 defining limited-liability-entity exemptions for family farms and ranches, clearly indicate that people living and working in Nebraska, and their families, will be given ... favored treatment."  *Jones*, 405 F. Supp. 2d at 1080.  The manifest purpose of Initiative 300 therefore was to differentiate, or discriminate, between family farm corporations located in Nebraska as opposed to those located elsewhere.

Further, while we deem it unnecessary to discuss in detail the history preceding the adoption of Initiative 300, we believe that that history bolsters the plaintiffs' contention that discriminatory intent motivated voters to adopt Initiative 300.  To name but one example, television advertisements that supporters of Initiative 300 produced before its adoption concluded by stating: "Let's send a message to those rich out-of-state corporations.  Our land's not for sale, and neither is our vote.  Vote for Initiative 300."  It is clear beyond cavil that these ads bristle with an animus against out-of-state corporations.

## C.

We have concluded that Initiative 300 discriminates against out-of-state entities both on its face and because of its discriminatory intent.  And if a state constitutional provision "is indeed discriminatory, it is '*per se* invalid' unless the [State] 'can

demonstrate, under rigorous scrutiny, that [it has] no other means to advance a legitimate local interest.' " *Hazeltine*, 340 F.3d at 593 (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)).

The State Officials argue that some of the threats that stem from unrestricted corporate ownership of Nebraska farm and ranch land include absentee owners of land, negative effects on the social and economic culture of rural Nebraska, and a lack of good stewardship of the state's land, water, and natural resources. While the State Officials concede the district court's finding that the third problem could be resolved through other means, as, for instance, by regulation, they assert that the first two issues require the intervention of Initiative 300.

As the plaintiffs point out, however, the State Officials' argument with respect to preventing absentee ownership of land is directly contradicted by their interpretation of the family farm exception, under which an out-of-state corporation could own farmland or engage in farming operations without residing or performing daily labor in Nebraska. In addition, the State Officials do not indicate why land use and environmental regulations could not resolve any difficulties associated with absentee ownership. We think that the same holds true for the State Officials' claim about the "negative effects on the social and economic culture of rural Nebraska," though we cannot be sure what is meant by these terms. It appears in fact that the State Officials are attempting to obfuscate the issue by using such a vague definition of these "negative effects" that the definition itself is what prevents us from suggesting concrete alternative measures. Were the state interests more clearly defined, we would be able to discern whether specific regulations could address the particular difficulties that frustrate the promotion of those interests. We assume that a mere desire to maintain the status quo cannot in itself be a "legitimate local interest." Indeed, it is that kind of xenophobia that the dormant commerce clause sets its face against.

The State Officials failed to meet their burden of showing that Nebraska could not advance a legitimate local interest without discriminating against non-resident farm corporations and limited partnerships. The amendment passed as a result of Initiative 300 thus fails the conditions that we set out in *Hazeltine*, and we affirm the district court's holding that Neb. Const. art. XII, § 8 violates the dormant commerce clause both on its face and based on its discriminatory intent.

IV.

The State Officials urge us not to hold the entire amendment unconstitutional even if part of it is unconstitutional in its current form; rather, they say, we should sever its unconstitutional portions. As the district court explained, the Nebraska Supreme Court has held that a portion of a statute is severable if a "workable plan" remains after severance, the valid portions are "independently enforceable," the invalid portion did not serve as "such an inducement to the valid parts that the valid parts would not have passed without the invalid part," and severance will not violate the "intent of the Legislature." *Jaksha v. State*, 241 Neb. 106, 129, 486 N.W.2d 858, 873 (1992), *as quoted in Jones,* 405 F. Supp. 2d at 1087. We note, as did the district court, that the Nebraska Supreme Court has held that the constitutional part of an initiative to amend the state constitution "may be saved only if it appears that the unconstitutional part did not constitute an inducement to the passage of the remaining [part]." *Duggan v. Beerman*, 249 Neb. 411, 430, 544 N.W.2d 68, 79-80 (1996).

While severing the unconstitutional portion of the initiative amendment here leaves a workable plan that is independently enforceable, a severance would not satisfy the conditions that the Nebraska Supreme Court has outlined for a severance. Initiative 300 contains no severability clause and, like the district court, we "cannot conclude that the residency or day-to-day labor-and-management provisions in the family-farm exemption were not an inducement to the passage of Initiative 300," *Jones*, 405 F. Supp. 2d at 1088. Reading the amendment as we do, it would clearly violate the voters' intent to sever the portion in dispute. We thus have no other option

-14-

than to affirm the district court's judgment and hold that the entire amendment based on Initiative 300 is unconstitutional.

## V.

The State Officials also argue that six witness declarations, three depositions, certain deposition exhibits, and two videotape exhibits, all of which the plaintiffs offered in support of their motion for summary judgment, contained information that was not relevant to the adjudication of this case. We have considered the State Officials' objections and conclude that they are meritless.

## VI.

Because we agree with the district court's decision on the grounds that Neb. Const. art. XII, § 8 violates the dormant commerce clause, we have no occasion to reach the question of whether it also violates the ADA. We note that it may become necessary to address that question if the plaintiffs pressing the ADA claim move for and receive attorneys' fees in the district court. Until that happens, however, we see no reason to rule on the question of the applicability and effect of the ADA in the current circumstances of the case.

Affirmed.

_____