# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1846

_____

Alexis Bailly Vineyard, Inc., a Minnesota corporation; The Next Chapter Winery, LLC, a Minnesota limited liability company

*Plaintiffs - Appellants*

v.

John Harrington, in his official capacity as Commissioner of the Minnesota Department of Public Safety[1]

*Defendant - Appellee*

------------------------------

Adam Ruhland

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 14, 2019
Filed: July 29, 2019

_____

------------------------------------------------------------

[1]John Harrington has been appointed to serve as Commissioner of the Minnesota Department of Public Safety, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Alexis Bailly Vineyard, Inc. and The Next Chapter Winery, LLC (collectively, Farm Wineries) appeal from an order granting summary judgment to the Commissioner of the Minnesota Department of Public Safety (Commissioner). The district court held that the Farm Wineries lack standing to challenge a Minnesota statute that requires them to manufacture their wine with a majority of the ingredients grown or produced in Minnesota. On appeal, the Farm Wineries claim that the district court erred by granting summary judgment to the Commissioner and ask us to consider the merits of the dispute. We reverse the district court's order granting summary judgment and remand for further proceedings.

I.

Minnesota uses a three-tiered alcohol distribution system that separates the functions of manufacturer, wholesaler, and retailer. Retailers cannot manufacture alcohol and manufacturers cannot sell their product directly to retailers or the general public. *See* Minn. Stat. §§ 340A.301, 340A.401. Alternatively, Minnesota offers a "farm winery" license that allows manufacturers of wine or cider to sell their products directly to retailers and consumers. Minn. Stat. § 340A.315, subd. 2. The Minnesota Farm Wineries Act is part of an effort by Minnesota to "encourage and support the fledgling farm winery industry . . . [and to] nurture grape growing and winemaking." RESEARCH DEPARTMENT, MINN. HOUSE OF REPRESENTATIVES, FARM WINERIES, at 1 (June 2012), https://www.house.leg.state.mn.us/hrd/pubs/farmwine.pdf. To qualify as a farm winery, license holders must pay an annual license fee of $50, produce less than 75,000 gallons of wine annually, and be located on agricultural land. Minn. Stat. § 340A.315, subds. 1, 2, 9. The Act also mandates that a farm winery produce wine

"with a majority of the ingredients grown or produced in Minnesota." *Id.* § 340A.101, subd. 11.

Minnesota recognizes that growing grapes in northern climates is difficult and it may not be possible in some years for farm wineries to source more than half of their ingredients from Minnesota suppliers. So, the Act provides for an "affidavit exception" to the in-state requirement. Farm wineries may file an affidavit stating that "Minnesota-produced or -grown grapes, grape juice, other fruit bases or honey is not available in quantities sufficient to constitute a majority of the . . . wine produced by a farm winery." Minn. Stat. § 340A.315, subd. 4. If the Commissioner agrees, "the farm winery may use imported products" for one year, "after which time the farm winery must use the required amount of Minnesota products . . . unless the farm winery [] files a new affidavit." *Id.*

The Commissioner has never denied an affidavit request, but he does investigate them and the process is more than a rubber stamp. The Commissioner requires farm wineries to explain why they require an exemption from the in-state requirement and occasionally conducts site visits to ensure compliance. Farm wineries have historically filed affidavit requests when in-state growing conditions made it difficult or impossible for them to purchase enough ingredients from Minnesota growers.

The Farm Wineries hold farm winery licenses and want to expand their operations. Specifically, the Farm Wineries want to create new varieties, work with higher quality ingredients and more reliable suppliers, and increase the quantity of wine they produce. They argue that the in-state requirement prevents them from doing so.

In this pre-enforcement action, the Farm Wineries seek a declaration that the Act's in-state requirement violates the dormant Commerce Clause. Following

discovery, the parties filed cross-motions for summary judgment. The district court granted the Commissioner's motion, holding that the Farm Wineries did not have standing to challenge the Act. Despite finding that the inability to grow their businesses constituted an injury in fact, the court determined that the Farm Wineries caused their own injuries when they chose to seek a farm winery license instead of a wine manufacturer license. The court therefore held that the Farm Wineries' injuries were not fairly traceable to the statute and that they lacked standing. The Farm Wineries timely appealed.

## II.

We review the district court's standing analysis *de novo*. *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 545 (8th Cir. 2018). To establish standing, a plaintiff must show: "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune Hill*, 139 S. Ct. 1945, 1950 (2019). When a plaintiff is the object of government action, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). Because the Farm Wineries are the objects of the Farm Wineries Act and subject to future enforcement actions brought by the Commissioner, we find that they have standing to challenge the Act's constitutionality.

## A.

Injury in fact is "an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (quoting *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999)). Courts "do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). In pre-enforcement cases like this one, injury in fact exists when the plaintiffs allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). As the district court correctly found, the Farm Wineries have established injury in fact.

The Farm Wineries introduced evidence that they intend to increase their production by purchasing out-of-state ingredients. This conduct is "arguably affected with a constitutional interest," *id.*, because the dormant Commerce Clause protects individuals and businesses from "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter," *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994); *see also S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 593 (8th Cir. 2003).

The Act prohibits the Farm Wineries from increasing production by using out-of-state ingredients and they face a credible threat of prosecution if they disregard that fact. The Commissioner argues that the affidavit exception, along with a lack of prior enforcement, establishes that the threat of prosecution is not credible. Although Minnesota's enforcement history is relevant to our analysis, it is not determinative. Rather, when a course of action is within the plain text of a statute, a "credible threat of prosecution" exists. *See North Dakota v. Heydinger*, 825 F.3d 912, 917 (8th Cir. 2016) ("[The company's] concern that the statute will prohibit or sharply curtail its out-of-state transactions is well-grounded in the statute's plain text."). Additionally, although the Commissioner has never yet denied one, the Farm Wineries introduced evidence that shows the affidavits are seriously investigated and waivers granted based on the growing conditions in Minnesota during the covered period. As one state employee explained in an email produced during discovery, "Exemptions are intended to address one-time unforeseeable events." JA 82. There is no reason to

think that the Commissioner would be willing or able to grant a perpetual exception to the in-state requirement.

The Commissioner advances two other arguments for why the Farm Wineries have not been injured by the statute. Each misses the mark. First, he argues that under *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013), the Farm Wineries cannot demonstrate that their injury is "certainly impending" in order to establish standing. *Clapper* dealt with a challenge to a surveillance program by plaintiffs who, while not themselves the target of surveillance, believed that they communicated with individuals who were or likely would be targeted. *Id.* at 406. The Court held that in such cases, where the connection between a statute and a plaintiff is based on a "highly attenuated chain of possibilities," a court must find that the plaintiff has not been injured and lacks standing. *Id.* at 410. But *Clapper* did not upset the well-settled standing inquiry for plaintiffs, like the Farm Wineries, that are themselves the objects of a challenged statute. In this case, the Farm Wineries must merely allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, [where] there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298). They have done so.

Second, the Commissioner argues the Farm Wineries cannot show injury in the form of concrete economic loss because they have historically complied with the Act. Setting aside the fact that in this pre-enforcement challenge the Farm Wineries do not need to show economic loss, this argument additionally fails because they *can* make such a showing. The Farm Wineries have experienced reduced borrowing power, operational efficiencies, and marketing opportunities. As the district court recognized, "it is economically imprudent [for the Farm Wineries] to base substantial business investments on the mere *likelihood* of receiving future exemptions from state law." *Alexis Bailly Vineyard, Inc. v. Dohman*, No. 17-913, 2018 WL 5619979, at *3 (D. Minn. Apr. 9, 2018).

The Commissioner nevertheless contrasts this case with two cases where we found injury based on economic losses, *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003) and *Jones v. Gale*, 470 F.3d 1261 (8th Cir. 2006), because both those cases involved losses resulting from the enactment of *new* statutes. This difference is immaterial because the injuries alleged by the Farm Wineries resemble the injuries in *Hazeltine* and *Jones*. In *Jones*, for example, we held that the owner of a feedlot had been injured by a Nebraska law that "reduced [his] fiscal and operational management efficiencies, marketing opportunities, and borrowing power, as well as increased administration expenses and federal estate taxes." *Id.* at 1266. Neither *Hazeltine* nor *Jones* suggests that challenges to the constitutionality of a law can only be brought against new laws. The Farm Wineries allege that they are *presently injured* by the Farm Wineries Act because they cannot plan for and expand their businesses. As in *Hazeltine* and *Jones*, that is enough to establish injury in fact.

B.

Although the district court correctly held that the Farm Wineries had established injury in fact, the court further held that their injuries are not "fairly traceable" to the in-state requirement. We respectfully disagree. An injury is "fairly traceable" to a challenged statute when there is a "causal connection" between the two. *Lujan*, 504 U.S. at 560. Typically, we have considered an injury to be "fairly traceable" where "the named defendants . . . possess the authority to enforce the complained-of provision." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (quotations omitted). Here, the Commissioner has the authority to enforce the Act against the Farm Wineries.

It is true that the Farm Wineries do not have a right to sell alcohol outside of Minnesota's statutory framework and that they could have chosen to operate as wine manufacturers instead of farm wineries. But that is irrelevant to the traceability of their injuries. Minnesota is free to offer or not offer the farm winery license, or to

establish other license options for the production and sale of alcohol. What it cannot do—and what the Farm Wineries allege it has done—is condition a license on compliance with unconstitutional discrimination against out-of-state grape growers. *See Tenn. Wine and Spirits Retailers Assoc'n v. Thomas*, 139 S. Ct. 2449, 2470 (2019) ("[T]he Court has acknowledged that § 2 [of the Twenty-first Amendment] grants states latitude with respect to the regulation of alcohol, but the Court has repeatedly declined to read § 2 as allowing the states to violate the 'nondiscrimination principle.'"). The Farm Wineries, who wish to operate unencumbered by the allegedly unconstitutional constraint imposed by the in-state requirement, have alleged injuries that are fairly traceable to that provision.

The district court, relying on *McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), nevertheless held that the Farm Wineries' injuries were the self-inflicted results of their choices to operate under the Act. In our view, however, *McConnell* is inapposite. In *McConnell*, several lawmakers brought suit after Congress raised the legal limit on campaign contributions to politicians. They alleged that because of their "'wish' not to solicit or accept large contributions, *i.e.*, their personal choice," they would be at a disadvantage against candidates willing to accept the maximum legal contribution from donors. 540 U.S. at 228. The Supreme Court held that such an injury was not "fairly traceable" to the statute because the real cause of the harm was the lawmakers' choice *not to participate* in the statutory scheme. *Id.*

By contrast, the Farm Wineries have fully participated in this statutory scheme. They do not object to others having restraints removed from their businesses, they object to the restraints on their own. They are more like the plaintiffs in *Granholm v. Heald*, 544 U.S. 460, 466 (2005), who could not, because their businesses were located in other states, sell wine directly to consumers in Michigan and New York. Similarly, the Farm Wineries want to operate under Minnesota's farm winery program without the imposition of allegedly unconstitutional restraints.

-8-

                            *        *        *

The Farm Wineries have injuries that are traceable to the in-state requirement. For the same reason their injuries are traceable, they would be redressed by a declaratory judgment. We hold that the Farm Wineries have standing to bring this suit.

                                  III.

The Farm Wineries urge us to reach the merits and hold that the Act is unconstitutional because it affords "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Hazeltine*, 340 F.3d at 593 (quotations omitted). Although the issue was briefed before the district court, the district court did not reach it and it is our practice to remand such claims "[w]hen it would be beneficial for the district court to consider an . . . argument in the first instance." *BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 549 (8th Cir. 2018) (quoting *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer & Assocs.*, 742 F.3d 845, 851 (8th Cir. 2014)). "We believe that in this instance the better practice is for the district court to have the first opportunity to evaluate" the Farm Wineries' arguments. *Phelps-Roper v. Troutman*, 712 F.3d 412, 416 (8th Cir. 2013).

We reverse the district court's order dismissing the case for lack of standing and remand to the district court to consider the Farm Wineries' challenge to the Act's in-state requirement.

                    _____