# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2102
_____

Agred Foundation

*Plaintiff - Appellant*

v.

The United States Army Corps of Engineers; The Honorable Mark T. Esper, in his
official capacity as Secretary of the United States Army

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana
_____

Submitted: February 18, 2021
Filed: July 8, 2021
_____

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

The AGRED Foundation (AGRED) seeks a declaratory judgment regarding its
rights and obligations under a written agreement with the United States. The United
States Army Corps of Engineers (USACE), acting on behalf of the United States,
moved to dismiss for lack of subject matter jurisdiction on the grounds that AGRED

lacks standing. The district court[1] dismissed AGRED's claim after concluding that its injury was not caused by the USACE. We affirm.

## I. *Background*

Lake Erling is a man-made reservoir located in Lafayette County, Arkansas. International Paper Company (IP) built Lake Erling in 1956 as a water source for its paper mill. The lake, which spans approximately 7,100 acres, covers some land owned by the United States. In 1952, before building the lake, IP entered into an Act of Exchange with the United States.[2] The Act of Exchange granted IP the right to flood the government's land, with several conditions. In relevant part, the Act of Exchange (1) prohibited IP from placing restrictions on the public's use of Lake Erling and (2) required IP to allow public access to the lake over IP's land. The Act of Exchange stated:

> It is understood and agreed that International Paper Company shall place no restrictions upon the public use of the water area of the industrial water supply reservoir located on its lands either for flood control, recreational, wild life, or fishing and hunting purposes; and that

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

[2]The United States entered into the Act of Exchange pursuant to 33 U.S.C. § 558b, which provides:

> In any case in which it may be necessary or advisable in the execution of an authorized work of river and harbor improvement to exchange land or other property of the Government for private lands or property required for such project, the Secretary of the Army may, upon the recommendation of the Chief of Engineers, authorize such exchange upon terms and conditions deemed appropriate by him, and any conveyance of Government land or interests therein necessary to effect such exchange may be executed by the Secretary of the Army . . . .

it will permit and grant access over its lands adjoining the water area over and through routes to be agreed upon and designated by the Company and the United States.

Compl., Ex. A, at 7, *Agred Found. v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-04136-SOH (W.D. Ark. 2018), ECF No. 1-1. IP satisfied its obligations under the Act of Exchange, allowing public access to the lake and maintaining public access points over its land.

This state of affairs continued until 2013, when IP conveyed its interest in the land beneath Lake Erling to AGRED. As part of the conveyance, AGRED agreed to assume all of IP's obligations and duties under the Act of Exchange. AGRED and the United States entered into a Memorandum of Understanding ("Memorandum") regarding routes of public access to the lake. For example, the parties stipulated that the boat launch ramp at one end of the lake would continue to be a route of public access to Lake Erling and that designating the ramp as a route of public access "fulfills the parties' designation obligations in the Act of Exchange." Compl., Ex. D, at 2, *Agred Found. v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-04136-SOH (W.D. Ark. 2018), ECF No. 1-4. The Memorandum did not address charging fees for other access to the lake.

Once AGRED assumed ownership of Lake Erling, it began charging fees for certain access to the water. This included fees for adjoining landowners to have private access to the lake, fees for permits to build or maintain structures along the water, and fees for boat and trailer decals. In March 2016, Friends of Lake Erling Association (FOLEA), a group of individuals who either live near or use the lake, sued AGRED for declaratory and injunctive relief in the Lafayette County Circuit Court. FOLEA sought to prevent AGRED from charging fees related to accessing Lake Erling. In June 2016, the state court granted FOLEA's motion for summary judgment. It agreed with FOLEA that AGRED's fee-generating program constituted

an impermissible restriction on the public's access to the lake pursuant to the Act of Exchange and permanently enjoined AGRED from charging fees to access the lake. AGRED appealed, but the Arkansas Court of Appeals dismissed the appeal in October 2017 for lack of a final order and remanded the case for further consideration. *See AGRED Found. v. Friends of Lake Erling Ass'n*, 2017 Ark. App. 510 (2017). The state court litigation is ongoing.[3]

Shortly after FOLEA sued AGRED, but prior to the state court's injunction, AGRED contacted the United States, requesting that it publicly recognize that AGRED is entitled to charge fees under the terms of the Act of Exchange. The United States, acting through the USACE, responded in August 2016 that it takes no position on the issue. It explained that "the Act of Exchange neither authorizes nor prohibits fee-setting and fee-collecting"; that "the [Memorandum], like the Act of Exchange, is silent on fee-setting and fee-collecting"; and that "[b]oth instruments speak for themselves[] as to what they include and what they omit." Compl., Ex. E, at 1, 2, *Agred Found. v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-04136-SOH (W.D. Ark. 2018), ECF No. 1-5. It also noted that "fee-setting and fee-collecting by [AGRED] are not matters within the [USACE's] purview." *Id.* at 2.

Disappointed by the USACE's response, AGRED filed this action against the USACE, seeking a declaratory judgment that its fee-generating program is consistent with its rights under the Act of Exchange. The USACE moved to dismiss for lack of subject matter jurisdiction on the grounds that (1) AGRED lacks standing to sue, (2) the USACE is entitled to sovereign immunity, and (3) the Declaratory Judgment Act is not applicable to this case. The USACE maintained that it takes no position regarding whether AGRED is permitted to charge fees under the Act of Exchange.

---

[3]The Lafayette County Circuit Court again granted summary judgment to FOLEA in May 2020. AGRED filed a second appeal, which is pending.

The district court granted the USACE's motion to dismiss, concluding that it lacked subject matter jurisdiction over AGRED's claim because AGRED does not have standing.[4] The district court held that AGRED had suffered an injury but that the injury alleged—being sued in state court by FOLEA—was not caused by the USACE. Rather, it found that "[t]he Lafayette County litigation was precipitated by [AGRED's] decision to charge fees—not [the USACE's] decision to remain silent on the issue." *Agred Found. v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-04136, 2020 WL 2114928, at *5 (W.D. Ark. May 4, 2020). AGRED timely appealed.

## II. *Discussion*

Article III of the Constitution extends the judicial power of the United States to "Cases" and "Controversies" only. U.S. Const. art. III, § 2. "Constitutional standing (as opposed to statutory standing) is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017).

> The irreducible constitutional minimum of standing contains three requirements. First and foremost, there must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . .

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–104 (1998) (cleaned up).

---

[4]Because the standing issue was dispositive, the district court did not address sovereign immunity and the applicability of the Declaratory Judgment Act.

-5-

A plaintiff who brings suit in federal court has the burden of establishing standing. *Id.* If he cannot, his complaint must be dismissed for lack of subject matter jurisdiction. *Iowa Right To Life Comm., Inc. v. Tooker*, 717 F.3d 576, 584 (8th Cir. 2013). "We review a district court's dismissal for lack of subject matter jurisdiction *de novo*." *Kuhns*, 868 F.3d at 715.

AGRED argues that the district court erred in concluding that it does not have standing. Because the parties do not dispute the district court's finding that AGRED suffered an injury-in-fact, we go straight to the second requirement of causation. For causation to exist, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "[T]raceability . . . requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm. That connection cannot be overly attenuated." *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (quotations and citation omitted).

We agree with the district court that AGRED has not established a causal connection between its injury and the USACE's conduct.[5] The injury to AGRED, as alleged by AGRED and articulated by the district court, is that "[AGRED] is subject to a state-court injunction preventing it from charging fees relating to the use of its property without being subject to contempt and sanctions." *Agred Found.*, 2020 WL

---

[5]We note that AGRED argues at length that the district court erred in concluding that it lacks standing because it caused its own injury. This misconstrues the district court's holding and confuses the issues. While the district court did find that AGRED caused its own injury when it "opened the door for third parties to file suit," the relevant finding was that AGRED's "injury was *not caused* by [the USACE's] failure to recognize their right to charge fees." *Agred Found.*, 2020 WL 2114928, at *5 (emphasis added). The relevant question before us is whether the USACE caused AGRED's injury.

2114928, at *4. AGRED contends that the USACE caused this injury by failing to acknowledge its rights to charge fees under the Act of Exchange. We are not convinced.

There are several kinks in AGRED's causal chain. First, AGRED's alleged injury, the state-court injunction, results directly from FOLEA's thus far successful lawsuit, not from the USACE's refusal to take a position on the issue of fee-charging. FOLEA—not the USACE—sued AGRED. In fact, AGRED did not ask the USACE to take a position as to fee-charging until *after* FOLEA sued. Therefore, the injury began independently of any action or inaction by the USACE. Second, the USACE did not announce its position until five months after the state court litigation began—and over one month after the state court's ruling. The fact that AGRED's injury had been ongoing for five months before the USACE's alleged wrongdoing renders it logically implausible as a cause of AGRED's asserted injury. Third, when the USACE did take the position that it believed the Act of Exchange to be silent on the issue of fee-setting, this had no effect on the state court litigation. At base, AGRED's theory of causation is that the USACE caused its injury by failing, after the fact, to agree with AGRED's interpretation of the Act of Exchange. "For purposes of Article III, too many factors stand in the way of a direct causal relationship." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 936 (8th Cir. 2012).

AGRED attempts to reframe the issue by painting itself as the "object" of the USACE's action or inaction. *See Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 777–78 (8th Cir. 2019) ("When a plaintiff is the object of government action, 'there is ordinarily little question that the action or inaction has caused him injury . . . .'" (quoting *Lujan*, 504 U.S. at 561–62)). For example, it argues that it is under threat of future enforcement because the USACE could later decide that fee-setting is not allowed and then enforce the relevant portion of the Act of Exchange against AGRED. It is true that "[i]n pre-enforcement cases," an injury can arise from the "credible threat of" enforcement or prosecution. *See, e.g.*, *id.* at 778

-7-

(holding that plaintiffs had standing to seek a declaratory judgment that a provision of Minnesota law was unconstitutional because they faced a credible threat of enforcement of the law, which the defendants had the authority to enforce). But this is not a pre-enforcement case because AGRED's injury is not the threat of future enforcement from the USACE. That is neither the injury the district court found nor the injury that AGRED has argued thus far. Regardless, this injury is speculative and not imminent, given that the USACE has repeatedly refused to take a position on the fees and views them as being outside its "purview." *See Steel Co.*, 523 U.S. at 103 (explaining that the injury must be "actual or imminent, not conjectural or hypothetical" (internal quotation marks omitted)).

AGRED also tries to reframe this as a contract dispute between itself and the USACE. AGRED relies on *Maytag Corp. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, where we explained that "[i]n the context of disputes between parties to a contract, the declaratory judgment remedy 'is intended to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty.'" 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)). But this requires, among other things, that the "contractual dispute [be] real, in the sense that it is not factually hypothetical." *Id.* at 1082.

Here, there is no real contractual dispute between AGRED and the USACE. The USACE expressly stated that it not only takes no position regarding AGRED's contractual obligations, but also that fee-setting and fee-collecting "are not matters within [its] purview." Compl., Ex. E, at 2. AGRED claims that "[b]ecause it is the [USACE] that would have authority to enforce any provision of the Act of Exchange that might limit AGRED's rights in its own property, AGRED's injury is 'fairly traceable' to the Act of Exchange and the [USACE]." Appellant's Reply Br. at 9. This argument is logically flawed; even if the USACE is the only party with the authority to enforce a contract under the Act of Exchange, this does not mean that it *will* choose

to do so. We find the same logical flaw in AGRED's claim that it has standing because "AGRED and the [USACE] are the only parties to the Act of Exchange and therefore the *only* parties with any standing or authority to assert any right under the Act of Exchange." *Id.* at 8 (citation omitted). AGRED's lack of standing against someone else does not create standing against the USACE.

AGRED fails to meet the causation requirement for standing because it cannot show that its injury is fairly traceable to the USACE. Accordingly, the district court properly dismissed its claim for lack of subject matter jurisdiction.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's judgment.

_____